IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MAUREENE E. STANLEY, individually
and as personal representative of
the Estate of Charles F. Stanley,
deceased,

    Plaintiff,

v.                                          Civil Action No. 1:11CV54
                                                               (STAMP)

THE HUNTINGTON NATIONAL BANK,
a banking corporation,

    Defendant.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT,
DENYING AS MOOT DEFENDANT'S MOTIONS IN LIMINE
AND VACATING PRETRIAL CONFERENCE AND TRIAL**

I. Procedural History

The plaintiff, Maureene E. Stanley, initiated this civil action by filing a complaint in the Circuit Court of Monongalia County, West Virginia on March 17, 2011. The complaint alleges that the defendant, The Huntington National Bank ("Huntington Bank"), failed to properly process the plaintiff's credit life insurance claim to ensure that her home improvement credit line deed of trust loan was paid off. The plaintiff contends that even after she paid off her personal line of credit loan by filing the credit life insurance claim, the defendant continued to deduct loan payments and insurance premiums from her bank account, causing it to be over-drafted. The complaint sets forth claims of breach of contract, breach of Section 46A-6-104 of the West Virginia Consumer Credit and Protection Act ("WVCCPA"), and punitive damages. The

defendant removed the case to this Court on April 20, 2011 pursuant to 28 U.S.C. § 1441(a). On April 21, 2011, the plaintiff filed an objection to removal and motion to remand, which this Court denied on October 19, 2011.

On September 23, 2011, the plaintiff filed a motion to amend her complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure in order to add a claim of fraud in the inducement based upon misrepresentations allegedly made by Huntington Bank's loan officer. This Court denied the plaintiff's motion to amend on October 19, 2011, finding that the plaintiff had failed to satisfy the good cause standard of Rule 16(b). In that opinion, this Court also denied as moot the defendant's motion to extend the dispositive motions deadline.

Prior to the Court's denial of the plaintiff's motion to amend her complaint, the defendant filed a motion for summary judgment. That motion is now fully briefed and pending before the Court.[1] Having reviewed the parties' pleadings and the relevant law, this Court finds that the defendant's motion for summary judgment must be granted.

---

[1] This Court notes that in addition to filing a response to the motion for summary judgment, the plaintiff also filed a "reply to defendant's reply" (ECF No. 47). Pursuant to Local Rule of Civil Procedure 7.02(b)(3), parties are not to file surreply memoranda except by leave of court, which was not granted in this case.

## II. Facts[2]

On March 9, 2009, the plaintiff and her husband, Charles F. Stanley, opened a $100,000.00 home equity line of credit with Huntington Bank. During the closing, the Stanleys requested to purchase credit insurance on the loan. Instead, they were offered and purchased debt cancellation protection, which had a benefit of $50,000.00. The defendant described debt cancellation as "a two-party, in-house, product offered by Huntington in which Huntington agrees to cancel or forgive all or party of a qualifying customer's indebtedness upon the occurrences of certain events such as death and the diagnoses of a terminal medical condition." (Pl.'s Resp. 2.) In order to qualify for the debt cancellation product, the Stanleys were required to execute a Personal Credit Line Agreement Rider for Debt Cancellation ("Rider"). The loan closing and the debt cancellation transaction were performed by the defendant's loan officer, Briana Arbogast.

Part II, Question 1 of the Rider disqualifies anyone who has been diagnosed with, or treated for, "any brain, nervous system or mental/neurological disorder" at any time during the two year period preceding the application for the loan. During the closing, before executing the Rider, the Stanleys informed Ms. Arbogast that Mr. Stanley had Parkinson's disease and the parties discussed

---

[2]On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c). Therefore, for the purpose of deciding this motion, this Court considers the facts as presented by the plaintiff.

whether Parkinson's disease is a neurological disorder. The Stanleys stated to Ms. Arbogast that Mr. Stanley did have a neurological disorder, but Ms. Arbogast informed them that this would not disqualify them from the debt cancellation product.

Ms. Arbogast completed the Rider and the Stanleys signed the document. The Stanleys did not review the Rider prior to signing it, however, they did ask Ms. Arbogast questions regarding the Rider. The plaintiff was informed that she and her husband qualified for the debt cancellation protection and that their loan would be paid in full. Ms. Arbogast has no recollection of the transaction. Mr. Stanley died on November 29, 2009 as a result of pneumonia.

On December 21, 2009, the plaintiff submitted a claim form to Huntington Bank requesting benefits under the debt cancellation contract. Huntington Bank mailed a letter to the plaintiff on February 5, 2010, informing her that her claim was being denied for misrepresentations on the Rider. Thereafter, the plaintiff filed the above-styled civil action.

### III. Applicable Law

Under Rule 56(c) of the Federal Rules of Civil Procedure,

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine

> dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718-19 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)). However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(stating that summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law."

(citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

In its motion for summary judgment, Huntington Bank argues that the plain and unambiguous language of the Rider gave it the right to deny a claim for benefits if a misrepresentation was subsequently discovered with regard to the eligibility requirements. The defendant also argues that the plaintiff cannot, as a matter of law, sustain her burden of proving a violation of the WVCCPA against Huntington Bank. Finally, the defendant asserts that the facts do not support a claim for punitive damages.

In response, the plaintiff contends: (1) Huntington Bank violated the WVCCPA by falsely stating that insurance would fully pay off the loan upon Mr. Stanley's death, despite knowledge of his ineligibility and the fact that only half of the loan would be paid off under the Rider; (2) extrinsic evidence can be used to interpret the Rider since Huntington Bank made material misrepresentations regarding the cessation of liability in the event of Mr. Stanley's death; and (3) the defendant's inaccurate statements to the Stanleys demonstrate ambiguity from the surrounding circumstances that allow the Court to use extrinsic evidence in interpreting the Rider.

The defendant's reply reiterates its argument that the plaintiff has failed to show a genuine issue of material fact on her breach of contract claim since the unambiguous language of the Rider allowed Huntington Bank to deny debt cancellation benefits, and all evidence offered by the plaintiff to contradict the terms of the Rider would be inadmissible at trial. The defendant also reasserts that the plaintiff has failed to show a genuine issue of material fact requiring a trial on her WVCCPA claim and her claim for punitive damages. This Court will address each of these arguments in turn.

A.  <u>Breach of Contract</u>

Count I of the plaintiff's complaint alleges that Huntington Bank breached the loan agreement by refusing to properly process the plaintiff's credit life insurance claim, by failing to pay off

the plaintiff's loan with insurance, and by continuing to deduct loan payments and insurance premiums from the plaintiff's account. However, the facts show that Huntington Bank did process the claim, but ultimately denied debt protection benefits on February 5, 2010. Thus, there is no cognizable action for breach of contract based upon a failure to process the plaintiff's claim. The allegation requiring contractual analysis is whether Huntington Bank was within its rights under the Rider to deny benefits.

Under the law in West Virginia, "it is for a trial court to determine whether the terms of an integrated agreement are unambiguous and, if so, to construe the contract according to its plain meaning." <u>Fraternal Order of Police, Lodge No. 69 v. City of Fairmont</u>, 468 S.E.2d 712, 715 (W. Va. 1996) (stating that questions about the meaning of contractual provisions are questions of law).

> A written contract merges all negotiations and representations which occurred before its execution, and in the absence of fraud, mistake, or material misrepresentations extrinsic evidence cannot be used to alter or interpret language in a written contract which is otherwise plain and unambiguous.

Syl. Pt. 3, <u>Iafolla v. Douglas Pocahontas Coal Corp.</u>, 250 S.E.2d 128, 130 (W. Va. 1978). In this case, the plaintiff's complaint makes no specific allegations of fraud, mistake, or material misrepresentations. Thus, this Court must determine whether the written contract at issue -- the Rider -- is ambiguous.

"'Where the intent of the parties is clearly expressed in definite and unambiguous language on the face of the deed itself, the court is required to give effect to such language and

8

ordinarily should not resort to parol or extrinsic evidence.'" Perrine v. E.I. du Pont de Nemours & Co., 694 S.E.2d 815, 844 (W. Va. 2010) (quoting Pocahontas Land Corp. v. Evans, 332 S.E.2d 604, 609 (W. Va. 1985)). It is not the province of the court to alter the clear meaning and intent of the parties as expressed in their written contract or to make a new contract for them. See Cotiga Dev. Co. v. United Fuel Gas Co., 128 S.E.2d 626, 633 (W. Va. 1962). Importantly, a contract is not ambiguous merely because the parties disagree over the construction of a contract. See Mylan Laboratories Inc. v. Am. Motorists Ins. Co., 700 S.E.2d 518, 525 (W. Va. 2010). Rather, ambiguity arises when the language of a contract is reasonably susceptible to two different meanings "or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning." Id. at 524 (internal quotations omitted).

Part II of the Rider required the Stanleys to answer a series of questions to confirm their eligibility for the debt protection product. Specifically, Question 1(b) asked the Stanleys if, during the past two years, they had been treated for or told that they have any mental or neurological disorder. (Stanley Dep. 83:1-5, July 14, 2011). The answer "no" was circled for both protected borrowers. However, the record reveals that at the time the Rider was signed, Mr. Stanley had already been diagnosed with and was

9

being treated for Parkinson's disease.[3] Later, the plaintiff acknowledged that the answer to this question should have been "yes," even though the answer "no" was circled. (Stanley Dep. 84:18-21). Part II of the Rider explains that a "yes" answer to Question 1(b) makes the applicant ineligible for protection. The bottom of page 1 of the Rider confirms, in bold print, that the plaintiff and her husband, by signing the form, acknowledge receiving and having carefully read the document.

Section 4.0 of the additional terms of the Rider confirms that a misrepresentation on the eligibility section of the document would void any coverage. Specifically, Section 4.0 reads:

> We require You to furnish evidence of Your eligibility for the protections You selected. If You make any material misrepresentation or misrepresentations to Us in connection with this Rider or the PCL Agreement, whether in writing or otherwise: (i) protection will be voided; (ii) We will credit to the Outstanding Credit Line Balance the amount of the monthly Fees You have paid; and (iii) We will deny any Debt Cancellation Protection request You file under this Rider. A misrepresentation is material if knowledge by Us of the truth of the facts misrepresented would have led to Our rejection of Your eligibility for the selected protections based upon the criteria in effect on the Protection Effective Date.

---

[3]Parkinson's disease is one of the underlying causes listed on Mr. Stanley's death certificate (Def.'s Mot. for Summ. J. Ex. 8.) After her husband's death, the plaintiff submitted a claim form to Huntington requesting benefits under the debt cancellation contract. (Def.'s Mot. for Summ. J. Ex. 11.) Huntington Bank then mailed the plaintiff a letter requesting contact information on the attending physician for Mr. Stanley. The plaintiff informed Huntington Bank that Mr. Stanley was being treated by Dr. Gregory Doyle at the time of his death. Upon receipt of the medical information from Dr. Doyle, Huntington Bank denied the claim for benefits under the Rider based upon the fact that Mr. Stanley had Parkinson's disease at the time he applied for debt cancellation protection. (Def.'s Disc. Resp. 5.)

(Def.'s Mot. for Summ. J. Ex. A(2).) The language of the Rider clearly reserves the right for Huntington Bank to deny debt protection coverage if any of the information supplied on the eligibility section of the Rider was false. Therefore, Huntington Bank was within its rights to deny debt protection coverage under the contract based upon the Stanleys' representation that Mr. Stanley did not have a neurological disorder, when in fact, he suffered from Parkinson's disease.

The plaintiff claims that the circumstances surrounding the execution of the Rider demonstrate the Rider's ambiguity and support the use of extrinsic evidence to interpret the Rider. Specifically, the plaintiff argues that the Stanleys lacked the ability to interpret the terms of the Rider and therefore put their trust in Ms. Arbogast, who informed them that Mr. Stanley's illness would not disqualify them from debt cancellation protection. (Sarah Stanley Dep. 17:1-10, Sept. 20, 2011.) The plaintiff further alleges that Ms. Arbogast informed the Stanleys that their loan obligation would fully cease in the event of Mr. Stanley's death. The loan officer, Ms. Arbogast, claims that she has no recollection of the Stanley loan closing. (Arbogast Dep. 28:16-19, July 14, 2011.)

This conflicting testimony regarding the conversations that took place at closing is irrelevant for purposes of evaluating the plaintiff's breach of contract claim, as the discussions which occurred before the execution of the Rider cannot be used to alter

11

the unambiguous terms of the Rider.  See Iafolla, 250 S.E.2d at Syl. Pt. 3.  The plaintiff's complaint lacks any claim of fraud, mistake, or material misrepresentation.  Thus, the unambiguous terms of the Rider must stand, and the defendant is entitled to summary judgment on the breach of contract claim.

B.  Good Faith and Fair Dealing

Count I of the plaintiff's complaint also sets forth a claim that the defendant breached the common law duty of good faith and fair dealing in executing the loan agreement. (Compl. ¶ 13.) West Virginia law recognizes that "'in every contract there exists an implied covenant of good faith and fair dealing.'" Burbach Broad. Co. of Delaware v. Elkins Radio Corp., 278 F.3d 401, 409 (4th Cir. 2002) (quoting Harless v. First National Bank in Fairmont, 246 S.E.2d 270, 274 (W. Va. 1978)).  West Virginia law does not, however, recognize an independent cause of action for the breach of an implied covenant of good faith and fair dealing separate and apart from a breach of contract claim.  Stand Energy Corp. v. Columbia Gas Transmission Corp., 373 F. Supp. 2d 631, 644 (S.D. W. Va. 2005); see also Warden v. PHH Mortg. Corp., No. 3:10-cv-75, 2010 WL 3720128, at *5 (N.D. W. Va. Sept. 16, 2010).

The defendant argues that the plaintiff's attempt to use the implied covenant of good faith and fair dealing to force Huntington Bank to forgive a debt must fail because it is not predicated on a breach of contract.  The plaintiff's response fails to address this argument.  This Court agrees that the implied covenant of good

12

faith and fair dealing cannot give contracting parties rights which are inconsistent with those set out in the contract. See Kesling v. Countrywide Home Loans, Inc., No. 2:09-588, 2011 WL 227637, at *4 (S.D. W. Va. Jan. 24, 2011). Therefore, the defendant is entitled to summary judgment on the claim of breach of the implied covenant of good faith and fair dealing.

Although the plaintiff fails to present a counter-argument regarding the implied covenant of good faith and fair dealing, the plaintiff does argue in her response that she and her husband were not given an opportunity to review the Rider before signing it and that they lacked education on debt cancellation contracts. The doctrine of reasonable expectations, a canon of construction applied to insurance contracts in West Virginia, states that the "objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Syl. Pt. 8, Nat'l Mut. Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488 (W. V. 1987).[4] "In West Virginia, the doctrine of reasonable expectations is limited to those instances . . . in which the policy language is ambiguous." McMahon, 356 S.E.2d at 496. Thus, whether the Rider is construed as an insurance contract or not, the plaintiff cannot

---

[4]The application of the doctrine of reasonable expectations has resulted in a relaxation of the earlier-stated rule that a party to a contract has a duty to read the instrument. See McMahon, 356 S.E.2d at 495 n.6.

13

avoid its terms simply by claiming that she did not read it because the language is unambiguous.[5]

C.  <u>West Virginia Consumer Credit Protection Act</u>

Count II of the plaintiff's complaint alleges that Huntington Bank violated Section 46A-6-104 of the WVCCPA by failing and/or refusing to file or process the plaintiff's credit life insurance claim, failing and/or refusing to keep the plaintiff reasonably informed as to the status of the claim, and failing and/or refusing to see that the loan was paid off by the credit insurance, and wrongly deducting payments and insurance premiums from the plaintiff's account after the death of her husband. (Compl. ¶ 17.)[6]

The WVCCPA provides a private cause of action for:

(a) Any person who purchases or leases goods or services and thereby suffers any ascertainable loss of money or

---

[5]The defendant argues that the doctrine of reasonable expectations is inapplicable in this case because the Rider is not an insurance contract. The defendant characterizes the Rider as a two-party agreement between Huntington Bank and the debtor. However, "[i]t can hardly be disputed that debt cancellation agreements and credit insurance serve the same basic purpose. Although they differ somewhat in legal form, each product extinguishes the remaining balance of the consumer's loan in the event of a covered contingency." <u>Am. Bankers Inc. Group, Inc. v. Bd. of Governors of the Fed. Reserve Sys.</u>, 3 F. Supp. 2d 37, 44 (D.D.C. 1998). As explained above, even if this Court were to characterize the Rider as an insurance contract, it does not alter this Court's finding that the doctrine of reasonable expectations does not apply because the language of the Rider clearly sets forth the exclusions.

[6]The plaintiff acknowledges that she continues to be charged for the debt protection coverage because she still has coverage on the line of credit for her own life, and she wants this coverage to remain intact. (Stanley Dep. 134:11-23.)

> property, real or personal, as a result of the use or employment by another person of a method, act or practice prohibited or declared to be unlawful by the provisions of this article . . . .

W. Va. Code § 46A-6-106(a). The Supreme Court of Appeals of West Virginia has defined the elements of a private cause of action brought pursuant to Section 46A-6-106(a) to include: "unlawful conduct by the seller, an ascertainable loss on the part of the consumer, and a causal connection between the ascertainable loss and the conduct forming the basis of the lawsuit." White v. Wyeth, 705 S.E.2d 828, 835 (W. Va. 2010). "Where the alleged deceptive conduct or practice involves affirmative misrepresentations, reliance on such misrepresentations must be proven in order to satisfy the requisite causal connection." Id. at Syl. Pt. 5.

In its motion for summary judgment, the defendant argues that Section 46A-6-106(a) does not encompass claims relating to the processing and handling of a claim for benefits under a product such as debt protection. Moreover, the defendant alleges that even if the plaintiff's allegations fell within Section 46A-6-106(a), the plaintiff failed to comply with a mandatory condition precedent to asserting a cause of action based upon this section, set forth in Section 46A-6-106(b), which states:

> Notwithstanding the provisions of subsection (a) of this section, no action may be brought pursuant to the provisions of this section until the consumer has informed the seller of lessor in writing and by certified mail of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation to make a cure offer: Provided, That the consumer shall have ten days from receipt of the cure

>     offer to accept the cure offer or it is deemed refused
>     and withdrawn.

W. Va. Code § 46A-6-106(b). According to the defendant, the correspondence sent to it by the plaintiff did not assert any alleged violation of the WVCCPA. Thus, the plaintiff's letters do not meet the notice requirements of Section 46A-6-106(b), which are mandatory prerequisites to filing suit under Section 46A-6-106(a). Finally, the defendant asserts that even if the plaintiff's allegations fell within the scope of Section 46A-6-106(a) and the prerequisite of Section 46A-6-106(b) had been satisfied, the plaintiff cannot sustain her burden of proof on her claims because Huntington Bank did, in fact, process her claim, provide her with status updates, and advise her of the denial of her claim. (Winbush Dep. 10:14-24; 11:1-14, July 14, 2011) (Stanley Dep. 129:1-24; 131:9-13.) The plaintiff's response does not address any of the defendant's arguments regarding the WVCCPA.

This Court agrees that even if the plaintiff's claims fell within the purview of Section 46A-6-106(a), the plaintiff's failure to comply with the mandatory prerequisite set forth in Section 46A-6-106(b) bars her from bringing a claim. Further, even if the plaintiff had met the statutory requirements, she has failed to allege a viable cause of action against Huntington Bank for violation of the WVCCPA. In her response, the plaintiff attempts to assert a new WVCCPA claim -- that Huntington Bank, through Ms. Arbogast, engaged in deceptive acts. However, as this deceptive acts argument is not asserted in the plaintiff's complaint, it is

barred. Further, Rule 9(b) of the Federal Rules of Civil Procedure requires claimants to plead fraud with particularity, which the plaintiff has not done. See Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) ("[T]he circumstances required to be pled with particularity under Rule 9(b) are 'the time, place, and contends of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.") (internal quotations omitted). For these reasons, the defendant is entitled to summary judgment on the WVCCPA claim.

D. Punitive Damages

The plaintiff's complaint alleges that the defendant's actions were reckless, willful, intentional, and part of a pattern and practice of doing business that justifies the award of punitive damages. The defendant claims that the plaintiff is not entitled to punitive damages because Huntington Bank was simply exercising its rights under the Rider to deny benefits upon discovering a misrepresentation of eligibility requirements. This Court agrees and finds that the plaintiff is not entitled to punitive damages as there is no liability on the part of the defendant.

"To sustain a claim for punitive damages, the wrongful act must have been done maliciously, wantonly, mischievously, or with criminal indifference to civil obligations." Syl. Pt. 3, Warden v. Bank of Mingo, 341 S.E.2d 679 (W. Va. 1985) (internal quotations omitted). This Court finds that in this case, the plaintiff has

17

produced no evidence to show that Huntington Bank acted maliciously, wantonly, mischievously, or with criminal indifference. Thus, summary judgment must be granted to the defendant as to the claim for punitive damages.

## V. Conclusion

For the reasons stated above, the defendant's motion for summary judgment is GRANTED (ECF. No. 42). Additionally, the defendant's motions in limine are DENIED AS MOOT (ECF Nos. 49, 50, 51). The pretrial conference and trial in this matter are hereby VACATED, and it is ORDERED that this case be DISMISSED and STRICKEN from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:   January 27, 2012

                               /s/ Frederick P. Stamp, Jr.
                               FREDERICK P. STAMP, JR.
                               UNITED STATES DISTRICT JUDGE